On tjie Merits.
I.
As to the act of elation enjpaiement, whose nullity is demanded.
It was passed on the 23d of November, 1878, and purports to transfer to Mrs. Seheen, the wife of the insolvent, a large part of his real estate, in the Parish of Red River, consisting of many tracts of land and town lots, in Coushatta. The consideration of this transfer, as declared in the acts, is one-half interest in the commercial partnership of Sclieen & Bradley, which had been carried on at Sparta, in Bienville Parish, and which it was-stated that Bradley, who ivas the father of Mrs. Seheen, had given her, and which was valued at $10,000. There was no inventory of the assets of this partnership accompanying the act, and no specific description of what stock or property, rights and credits, belonged to the partnership. Bradley, the alleged donor, was no party to the act, and apart from the bare statement of what constituted the consideration of the elation, there was no evidence of the gift, nor even of the existence of such partnership. Subsequently, Mrs. Seheen, in a suit for separation of property against her husband, valued this partnership interest at $15,000, which she claimed as a debt against him, but it was disallowed by the Judge, although not opposed, as the defendant therein made default, and no appeal was taken from such rejection of the claim; and in fact, the claim, bearing upon its face its fictitious character, seems to have been abandoned on the trial of the suit in question, and in this Court no claim whatever is made to the reality of this particular consideration, or of its constituting a charge of the wife against her husband, but the act in question is defended entirely on other grounds, which we shall hereafter refer to.
Article 1873, Civil Code, declares : “An obligation without a cause or with a false cause, can have no effect.”
In the case of Halsted vs. Noble, 1 A. 192, commenting on this Articles Eustis, C. J., uses this language :
“ But when an engagement or consideration, or, what is the same thing, when the cause for which it was contracted was false, the engagement is null, and the contract based on it also null, and cannot be enforced by an action.”
The word cause, as used in Art. 1873, referred to, and almost universally by civilians, is synonymous with consideration. In the present *689 case, there cannot be a doubt that the cause or consideration, as set forth in the dation en paiement, was in fact no legal consideration, or was, in the language of the Article, a false cause. The act would, therefore, incur the penalty declared against it in the Article, and be “ without effect,” unless saved by a subsequent Article of the Code, 1900, which is cited and relied on by the defendant’s counsel, and which is in these words:
“ If the cause expressed in the consideration should be one that does not exist, yet the contract cannot be invalidated if the party can show the existence of a true and sufficient consideration.”
To give this Article the meaning contended for by the counsel, would make it completely unsay all that is declared by the previous Article, first quoted. That is, that although a contract sets forth a particular consideration, that notwithstanding the absence or the falsity of such consideration, that it can be maintained, if it can be proved that there existed between the parties another consideration, which might have been made the consideration of the contract, although such consideration had no connection whatever with that expressed, and was one which the parties never contemplated at the time.
We cannot accept this construction and assent to the proposition involved in it. We have closely considered the Articles and compared the two, and attentively examined all the authorities cited by counsel in support of their views, and others bearing on the point, and we find no conflict between the two Articles, and no difficulty in discovering the true meaning of the last cited to be, that where there is a. real consideration for a contract, and there must be such a consideration in all valid contracts, yet if that consideration is described in the act as one thing, but, in fact, is another thing, which the parties contemplated at the time, in connection with each other, and merely called the one for the other in the act, the act is valid, and to support it the consideration may be explained by evidence. For instance, a sale is declared to be made for cash, in fact it is not made for cash, hut for a debt owing by the vendor to the vendee, and which was of the same amount, and represented the cash expressed, or where it was for so many bales of cotton, or so many hogsheads of sugar, or other thing, which the parties valued at so much cash, and expressed such valuation in the deed; But it is needless to illustrate further. Our views are confirmed, as to this particular contract, by its very nature, and the legal requisites that are essential to a sale or giving in payment, and enter into their definition. To he valid, there must, in such contracts, be a thing, a price or consideration, and consent.' And there must be a consent, an aejgregatio inentiiem, both as to the thing- and the price or consideration. If the thing conveyed was that which both, or either of the parties was not *690 thinking about, ot had not in their minds at the time, or the price or consideration stipulated, and which they had exclusively in contemplation at the time, had no existence or was false, then the contract, in either case, was void. And no other thing, afterwards thought of, and no other consideration which they might have made the price or cause of the contract, will ever re-habilitate it or cure the nullity.
The expression in the act, referred to by defendants’ counsel, as enlarging its scope, and as confirming their construction of it, to the effect that the elation, or transfer in question, was to satisfy, pro tanto, the paraphernal claims of the wife, so from having such a tendency, would more properly seem to confine the consideration of the act to that speci (really named, and exclude the idea of any other consideration; it was as much as to say, this settles the partnership interest of the wife, valued at $10,000, but leaves intact all other paraphernal claims which are not trenched upon by this transaction. For these reasons, and after a thorough and prolonged study of the question, and of all the law and the facts bearing on it, we are forced to conclude tjiat this act of giving in payment was null and void, and without effect as to the creditors of J. H. Scheen.
II.
In relation to the judgment of separation of property between Mrs. Scheen and her husband, the conclusion we have reached upon one feature of the case, bearing oii this branch of it, dispenses us from the necessity of discussing the voluminous evidence in the record, introduced with reference to the claims of the wife against her husband, and which the judgment recognizes. Granting that the evidence justified-the judgment, upon which we express no opinion, under our construction of the law applicable to the point in question, there was not that compliance with the legal requirements, touching' the execution of the judgment, that were essential to give it full operation and effect. It is not the judgment itself that produces the separation of property, but the fulfilment of the conditions that must follow its rendition.
What those conditions and requirements are, are sot forth in no doubtful terms by Article 2428 of the Civil Code, which reads as follows:
“The separation of property, although decreed by a court of justice, is null, if it has not been executed by the payment of the rights and claims of the wife, made to appear by an authentic act, as far as the estate of the husband can meet them, or at least by a bona fide non-interrupted suit to obtain them.”
This language is so plain and unambiguous, that it seems almost *691 impossible that it should become a subject of doubt or of varied construction.
One of the earliest cases in which the Article received judicial construction was that of Bertie vs. Walker, sheriff, 1 R. 431. In the opinion of the Court, delivered in that case, we find the following language:
“ As relates, however, to the execution of the decree by j udicial proceedings, it may well be that an unusual delay or interruption would be fatal to the wife. The decree of separation, whatever may be its terms, does not render the parties separate in property; it entitles the wife to a separation, but the right vanishes, if not followed by a prompt and bona fide execution of the judgment. It is all important for the protection of the creditors of a married man, under a system of laws like ours, that these requisites of the Code should be rigorously insisted on. Decrees of separation are not unfrequeutly made a cloak to screen the property of the husband from the pursuit ■ of his creditors. The tardy attempt to execute the decree of separation, several months after the seizure, cannot affect the rights of the judgment creditors.”
In the case of Nachman vs. Leblanc, 28 A. 346, the doctrine of the case just cited was re-affirmed, and in that case the Court used the following emphatic language:
After quoting Article C. C. 2428, they proceed: “ For obvious reasons this bona fide non-interrupted suit to obtain payment and satisfaction of the wife’s j udgment is imperative, and nullity results from its non-observance. Here eleven months elapsed after the rendition of the plaintiff’s judgment against her liusbaud, before any move of any kind was made to enforce it. There is no reason why the dation enpaiement could not have been made at once, or at least in a briefer period of time than eleven months, we cannot but conclude with the Judge a quo that through her laches, in failing to comply strictly with the law requiring prompt and continuous effort to enforce the payment of her judgment, it had become null,” etc.
These decisions meet our approval, and are really nothing more than a reiteration of the plain words of the Code.
We have been referred to the cases of Cormier vs. Ryan, 10 A. 688, and of Bird vs. Duralde, sheriff, 23 A. 322, as offering a more liberal construction of the Article in question.
In the first case, the delay in issuing the execution was from the 14th of November to the 10th of March following. There the wife acquired certain property in her own name, after obtaining judgment, which was seized for the husband’s debts, and from reading the decision, it is plain that the Court was governed largely in its conclusion by the fact that is unquestionable, that the property in qirestion was acquired by the separate means of the wife.
*692 In the other case cited, three executions issued; the first soon after the rendition of the judgment, a.nd were followed by seizures and sales of property, by which it appears that all the visible effects of the husband were exhausted, and the language of the Court, which the counsel construe as favorable to their position, had reference to the delay that followed the last execution.
If these decisions can be construed as sanctioning the departure claimed, from what we deem the plain and imperative requirements of the law, as determined and interpreted by the decisions we first cited, we cannot follow them. The privileges conferred oir married women by these and similar provisions of our law, were conferred for the beneficial purpose of protecting their just rights from the claims of the husband’s creditors, when misfortune and embarrassment has overtaken him. They are ample for the protection of their just rights, when fairly and honestly construed, but they have been, and can be made, the moans of inflicting great wrong upon the rights of others by a loose, perverted and vicious construction. These privileges, conferred by the provisions mentioned, are of an extraordinary nature, and under our jurisprudence, except married women from the operation of those laws which forbid the insolvent debtor from giving an unfair preference to, or upon his property, and they are in derogation of the rights of other creditors. The laws that entitle them to the enforcement and full functions of these privileges, should be strictly construed and not enlarged by implication.
But in this case, we are asked to go farther than the decisions referred to by counsel, or any other decisions of this Court have ever gone, in interpreting the requirements of the Article referred to, and sanctioning a less strict compliance with them than any of the cases present.
In the instant case, the judgment of separation was rendered on the 27th of May, 1879. The only execution that was ever attempted to be executed, or under which a seizure was made, or that was ever returned into court, was issued on the 8th of April, 1880, eleven months after-wards, and directed to the sheriff of Bienville Parish. It is true that in September previous, a similar writ had been issued and similarly directed, but no attempt was made to execute it, and it was lost or mislaid by the sheriff. This neglect was not because the debtor had no property subject to the writ, for, as shown by the return of the sheriff, on the second writ and otherwise, he had a large property in that Parish, (Bienville).
In the Parish of Bed Eiver, where the judgment was rendered and the debtor resided, no execution issued at all, although the property, rights and credits of the debtor in that Parish when the judgment was *693 rendered, and after that, amounted to many thousand dollars, more than enough, according to the estimates of the debtor and others, to satisfy the judgment — property and assets, to which, or upon which the counsel contend with much earnestness, that Mrs. Scheen’s recorded judgment gave her superior rights over his creditors who had attached it.
Scheen made his surrender on the 8th May, 1880.
In the hice of this showing, it cannot be said, nor is it pretended that the judgment was ever “ executed by the payment of the rights and claims of the wife by an authentic act, as far as the estate of the husband can meet them.” And how can it be said that it was “ executed at least by a Iona fide, non-interrupted suit to obtain her rights or realize her claims.” We cannot say so. Tim judgment was null for noncompliance with these requirements. The law so declares it.
Whatever claims Mrs. Scheen may have against her husband, J. H. Scheen, are reserved to her, with the right to prosecute them in such mode and manner as the law may provide.
It is, therefore, ordered, adjudged and decreed,.that the judgment of the lower court is annulled, avoided and reversed, and proceeding to render such judgment as should have been rendered, it is further ordered, adjudged and decreed, that the actof dation en paiemmt passed between Mrs. Nancy A. Bradley, wife of J. H. Scheen, and her said husband, on the 23d of November, 1878, and the judgment of separation of property between said parties, rendered on the 27th of May, 1879, attacked in this suit, be, and the same are hereby declared null and void, and that the property embraced in the said act of the 23d of November, 1878, bo decreed to belong to the estate of J. H. Scheen, insolvent; the costs of both Courts to be paid by defendants.
Mr. Justice Levy recuses himself, having been of counsel.